O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CORTEZ, an individual, | Case No. CV 11-03274 DDP (AGRx) |
| Plaintiff, | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | [Docket No. 34] |
| LEROY D. BACA, SHERIFF OF THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; THE COUNTY OF LOS ANGELES, a Municipal corporation; LOS ANGELES COUNTY DEPUTY SHERIFF CASTLE, BADGE NO. 515174, an individual; AND LOS ANGELES COUNTY DEPUTY SHERIFF BRADEN, BADGE NO. 405667, an individual, | |
| Defendants. | |

Presently before the court is Defendants' Motion for Summary Judgment, or in the Alternative Summary Adjudication of Issues ("Motion"). Having reviewed the parties' moving papers and heard oral argument, the court denies the Motion in part, grants the Motion in part, and adopts the following Order.

**I.   BACKGROUND**

Defendant Los Angeles County Deputy Sheriff Castle ("Deputy Castle") handcuffed Plaintiff Jose Cortez ("Cortez") during a traffic stop on April 23, 2010. Defendant Deputy Sheriff Braden ("Deputy Braden") was present at the time and acting as Deputy Castle's field training officer.

Cortez filed a First Amended Complaint on April 10, 2012, alleging the following federal claims: 1) constitutional violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; 2) racial discrimination, in violation of 42 U.S.C. § 1981; and 3) use of excessive force, in violation of 42 U.S.C. § 1983. Cortez also alleges state law claims for battery, false imprisonment, intentional infliction of emotional distress, and negligence.

Defendants filed this Motion on June 4, 2012, arguing that they are entitled to judgment as a matter of law on all of Cortez's claims.

**II.   LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the

2

suit under the governing law." Id. at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252. But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," when he or she is ruling on a motion for summary judgment. Id. at 255.

**III. DISCUSSION**

    **A.    Undisputed Claims**

As an initial matter, Cortez concedes that Defendants are entitled to summary judgment on his claims for constitutional violations of the First, Fifth, and Eight Amendments, and all claims against Defendant Sheriff Leroy D. Baca. The court therefore grants Defendants' Motion as to these claims.

    **B.    Excessive Force Claims**

Defendants also argue that they are each entitled to summary judgment on Cortez's excessive force claims under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. The court disagrees.

An excessive force claim turns on whether the officer's "use of force was objectively reasonable under the circumstances," balancing the plaintiff's liberty interest with the government interests at stake. Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Thus, "even where some force is justified, the amount actually used may be excessive." Santos, 287 F.3d at 853. Because this analysis almost always "requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment "should be granted sparingly" in excessive force cases. Id.

Here, the parties dispute a number of facts regarding the incident, such as whether a warrant check returned a felony or a misdemeanor warrant for an individual who turned out to be a different "Jose Cortez." But the court only needs to address one factual question to resolve this Motion: whether Defendant Castle used excessive force in his manner of handcuffing Cortez. On the one hand, Defendants contend that Deputy Castle conducted a routine and reasonable handcuffing of Cortez. Cortez, however, has provided evidence to the contrary.

According to Cortez's own deposition, Deputy Castle first "came up and shoved" Cortez into "the back of [his] truck." Deputy Castle then "kicked [Cortez's] feet open" - kicking each foot "at least three" times - and pulled both of Cortez's arms back until his "hands were crossed." In doing so, Deputy Castle "pulled [Cortez's right hand] back three times," pulling it "real hard" each time. Cortez felt pain in his shoulder with each pull and indicated his pain by moaning "[a]t least two times," loud enough

for Deputy Castle to hear. Cortez made gestures with his face as well, so that "anyone looking at [him] . . . would have known that [he] was in pain." Deputy Castle ultimately placed the handcuffs only on Cortez's left wrist. While he was being handcuffed, Cortez also asked Deputy Castle if he could use the bathroom. Deputy Castle did not respond and Cortez eventually urinated on himself, while he was still in handcuffs. (Decl. of Kenneth J. Sargoy in Supp. of Mot. ("Sargoy Decl.") ¶ 3, Ex. A.)

Cortez went to the hospital two days later, where he told doctors that he was injured by the handcuffing. A doctor diagnosed Cortez with a "right proximal biceps tendon rupture" and provided prescription pain medicine. (Id. ¶ 8, Ex. F.) An orthopedist has since recommended arthroscopic surgery, noting a "tear of the long head of the biceps tendon" and a "[p]artial thickness rotator cuff tear." (Id. ¶ 12, Ex. J.)

A passenger riding with Cortez at the time of the incident also testified at deposition. According to the passenger, Deputy Castle "moved . . . Cortez's feet" using a "drastic[]" amount of force. Deputy Castle also pulled Cortez's arm back "harshly" and "not gentl[y]," although not "violent[ly]." (Id. ¶ 4, Ex. B.)

Finally, Deputy Braden testified at deposition that he was Deputy Castle's "field training officer" and "supervisor" at the time of the incident. He also stated that he was "[s]tanding two feet from" Deputy Castle and Cortez, while "Deputy Castle applied [the] handcuffs." (Id. ¶ 5, Ex. C at 2-3, 14-15.)

In short, viewing the evidence in the light most favorable to Cortez, Deputy Castle used the following force against "a cooperative, non-resisting 66-year old man," during a traffic stop

5

for a "minor vehicle code violation": 1) he pushed Cortez into the back of Cortez's truck; and 2) kicked Cortez's legs multiple times in a harsh manner; then 3) yanked Cortez's right arm back multiple times, hard enough to cause serious injury to Cortez's shoulder and biceps; while 4) Cortez moaned and made facial gestures to indicate his pain to Deputy Castle, each time that Deputy Castle pulled his arm. (Opp'n at 8.) Whether or not the Deputies had a valid reason to handcuff Cortez in the first place - based on the misdemeanor or felony warrant information - a reasonable jury could find that Deputy Castle used excessive force in <u>how</u> he went about handcuffing Cortez.

In addition, Deputy Braden could be liable for Deputy Castle's alleged conduct - as Deputy's Castle's immediate supervisor, standing two feet away during the incident, but taking no steps to intervene. <u>See, e.g.</u>, <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining that, although there is no respondeat superior liability under § 1983, a supervisor can be "liable for constitutional violations of his subordinates if the supervisor . . . knew of the violations and failed to act to prevent them").

Finally, the court finds that neither Deputy is entitled to qualified immunity on Cortez's excessive force claims. As discussed, taking the evidence in the light most favorable to Cortez, the Deputies violated his constitutional rights by using excessive force during the handcuffing. Also, under these particular circumstances, a reasonable officer would have known that force sufficient to cause a tendon rupture was unconstitutional. It is clearly established - and Defendants do not dispute - that pulling an individual's arm multiple times and

6

forcefully enough to cause serious injury while the individual expresses pain, without any apparent justification for doing so, is unconstitutional. It is also clearly established that it is unconstitutional for a supervisor to fail to act to prevent such obvious constitutional violations, when the supervisor is present and directly observing the violation.

For all of these reasons, Deputies Castle and Braden are not entitled to summary judgment on Cortez's excessive force claims.

### C.   42 U.S.C. § 1981 Claim

As Defendants correctly explain, however, Cortez has provided no evidence that Defendants' alleged actions were racially motivated. In arguing to the contrary, Cortez notes only that: 1) the Deputies knew of Cortez's Hispanic ancestry; and 2) they used excessive force against him. What is missing is any evidence - circumstantial or otherwise - that the Deputies' alleged excessive force was connected to their awareness of Cortez's race. Defendants are therefore entitled to summary judgment on Cortez's § 1981 claim.

### D.   Monell Liability

Similarly, Cortez has not provided any evidence of a County of Los Angeles ("County") custom or policy from which a reasonable trier of fact could find Monell liability against the County on his federal claims. Cortez's only argument for such liability is that Deputy Braden's "single egregious act" of "deliberate indifference to the rights of" Cortez is "sufficient to render the County liable under Monell." Cortez provides one case cite for this proposition, involving very different circumstances. The court finds that Monell liability cannot be inferred solely from the single incident

at issue here. The County is therefore entitled to summary judgment on all of Cortez's federal claims.

    **E. State Law Claims**

    Finally, Defendants argue that the County is entitled to summary judgment on Cortez's state law tort claims, because "public entities do not face common law liability." In response, Cortez cites to the Ninth Circuit's decision addressing similar claims in Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002). As the Circuit explained: under California law, a county's immunity to such tort claims turns on whether the individual officers are immune; and California denies immunity to officers who use excessive force. See id. Thus, neither the Deputies nor the County are entitled to summary judgment on Cortez's state law tort claims here.

**IV. CONCLUSION**

    For all of these reasons, the court hereby DENIES Defendants' Motion for Summary Judgment as to: 1) Plaintiff's excessive force claims against Deputies Castle and Braden; and 2) Plaintiff's state law tort claims against the Deputies and the County. The court, however, GRANTS summary judgment for: 1) Defendant Baca on all of Plaintiff's claims; 2) the County on all of Plaintiff's federal claims; and 3) all Defendants on Plaintiff's § 1981 and First, Fifth, and Eighth Amendment claims.

IT IS SO ORDERED.

Dated: September 7, 2012

    DEAN D. PREGERSON
    United States District Judge